IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JACKIE E. ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:09cv1119-WC |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

Plaintiff Jackie E. Anderson applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381 *et seq*. Her applications were denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ issued a decision in which he found Plaintiff not disabled from the alleged onset date of December 14, 2006, through the date of the decision. Tr. 21. The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review under 42 U.S.C. § 405(g).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #7); Def.'s Consent to Jurisdiction (Doc. #8). Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next

---

[2]    A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.    ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-three years old at the time of the hearing before the ALJ. Tr. 25-26. Plaintiff completed the tenth grade. Tr. 26. Plaintiff's past relevant work experience was as a nurse's aide and "kitchen helper." Tr. 19, 28, 38. Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 14, 2006 (Step 1). Tr. 13. At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "morbid obesity; status post fracture left ankle and stress fracture left talus; small umbilical hernia; arthritis; and anemia." Tr. 13. The ALJ then found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ." (Step 3) Tr. 14. Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can sit up to one hour without interruption and up to six hours total within an eight hour workday. The claimant can stand and/or walk up to 30 minutes uninterrupted, and up to a total of six hours during an eight hour workday. The claimant can lift, carry, push and/or pull up to 10 lbs frequently, and up to 20 lbs occasionally. The claimant can frequently use her hands for simple grasping and/or fine manipulations. The claimant can frequently use her right foot for repetitive movements such as operating foot controls or pushing and pulling. The claimant can occasionally use her left foot for repetitive movements such as operating foot controls or pushing and pulling. The claimant can occasionally bend, stoop, crawl, crouch, and balance. The claimant cannot kneel. The claimant can climb stairs. The claimant cannot climb ladders, ropes, or scaffolds. The claimant cannot work at unprotected heights. The claimant cannot work with or near hazardous machinery. The claimant cannot operate a commercial vehicle. The claimant cannot work in environments involving concentrated or excessive exposure to pulmonary irritants such as dust, odors, fumes, extremes in temperature, or humidity. The claimant experiences

5

occasional mild to moderate pain which occasionally interferes with concentration, persistence, and pace.

Tr. 14. The ALJ then found that Plaintiff is unable to perform her past relevant work. (Step 4) Tr. 19-20. Next, the ALJ found that, given Plaintiff's age, education, work experience, and RFC, and after having consulted with a vocational expert, "there are jobs that exist in significant numbers in the national economy that Plaintiff can perform." (Step 5) Tr. 20. The ALJ found that such representative occupations include: "assembler electronics," "convenience store clerk," and "sales clerk." Tr. 20, 40. Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . from December 14, 2006, through the date of this decision." Tr. 21.

### IV.   PLAINTIFF'S CLAIMS

Plaintiff presents three issues for this Court's consideration in review of the ALJ's decision: (1) whether the "ALJ erred in failing to properly consider the Claimant's obesity as required by Social Security Ruling 02-01p[;]" (2) whether the "ALJ erred in finding that the Claimant does not have an impairment or combination of impairments that meets or equals one of the listed impairments[;]" and (3) whether the "ALJ erred in finding that the Claimant has the residual functional capacity to perform light work . . . ." Pl.'s Brief (Doc. #11) at 7.

### V.   DISCUSSION

####   A.   The ALJ's consideration of Plaintiff's obesity.

Plaintiff claims that the ALJ erred in "failing to properly consider the claimant's obesity as required by" SSR 02-1p. Pl.'s Brief (Doc. #11) at 8. After generally discussing some aspects of SSR 02-1p and the significance of Body Mass Index ("BMI"), Plaintiff concludes that "the ALJ has failed to properly consider and evaluate the affects [sic] of the Claimant's obesity as well as the impact it may have on her remaining severe impairments. The ALJ has also failed to properly consider and evaluate the affects [sic] of the Claimant's obesity on her residual functional capacity." *Id.* at 9. Plaintiff does not point to any specific deficiency in the ALJ's consideration of these issues or cite to medical evidence which contradicts the ALJ's decision. Nor does Plaintiff cite to any case law which demonstrates that the ALJ's consideration was inadequate. Defendant asserts that the ALJ adequately considered Plaintiff's obesity, and that his findings with respect to her obesity are supported by substantial evidence. Def.'s Brief (Doc. #12) at 5.

The ALJ determined that Plaintiff suffers from "morbid obesity," and that such impairment is severe. Tr. 13. The ALJ also noted that Plaintiff is "5'6" and 374 lbs, morbidly obese." Tr. 15. At the hearing, the ALJ heard testimony about Plaintiff's BMI. Tr. 36-37. Finally, in his opinion, the ALJ, citing to the applicable SSR, explained that he "did consider the affects [sic] of the claimant's obesity as well as the impact it may have on her remaining severe impairments. [The ALJ's] assessment of her residual functional capacity reflects [his] consideration of her obesity and its impacts (SSR 020-1p) thereto." Tr. 19. Indeed, as recounted above, the ALJ found Plaintiff's RFC very limited, including

7

that she is limited to light work, with additional limitations including that she may only sit for up to one hour at a time, may only walk for up to thirty minutes at a time, the she may only occasionally "bend, stoop, crawl, crouch, and balance," and that she cannot kneel. Tr. 14. Thus, it is evident that the ALJ was both aware of and did consider Plaintiff's obesity in rendering his decision.

Against this backdrop, Plaintiff's conclusory claim that the ALJ failed to properly consider her obesity fails. *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263-64 (11th Cir. 2009) (rejecting claim that ALJ violated SSR 02-1p where the "record reflects that the ALJ considered [the claimant's] obesity[,] . . . the ALJ made specific reference to SSR 02-1p in his ruling[,] . . . the ALJ determined that [the claimant's] obesity was a severe impairment[,]" but that medical evidence did not support "specific functional limitations" attributable to obesity). As discussed in *Castel*, SSR 02-1p states, in relevant part, as follows:

> "An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment . . . As explained in SSR 96-8p . . . our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . .
>
> . . . .
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity . . . .
>
> . . . .
>
> . . . When we identify obesity as a medically determinable impairment . . ., we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other

physical or mental impairments we identify."

*Id.* at 264 n.6 (quoting 67 Fed. Reg. 57859, 57862-63 (Sep. 12, 2002)). Here, as in *Castel*, the record reflects that the ALJ considered Plaintiff's obesity, made reference to SSR 02-1p, and determined that Plaintiff's obesity is a severe impairment. Additionally, the ALJ articulated significant functional limitations in Plaintiff's RFC. To the extent Plaintiff appears to assert that her sleep apnea, in combination with her obesity, was not adequately considered, *see* Pl.'s Brief (Doc. #11) at 9, it is apparent that the ALJ considered evidence of Plaintiff's sleep apnea, but that he did not find the impairment severe given that Plaintiff failed to present any evidence that she underwent a recommended "sleep test" or otherwise presented evidence of any limitations due to sleep apnea. Tr. 13.

The record reflects that the ALJ adequately considered Plaintiff's obesity when determining Plaintiff's RFC. Furthermore, substantial evidence, including the testimony of the medical expert, Tr. 34-35, and the Physical RFC Assessment, Tr. 163-170, support the ALJ's findings with respect to Plaintiff's functional limitations due to her obesity. Because Plaintiff has failed to demonstrate any particular flaw in the ALJ's treatment or consideration of her obesity, her claim that the ALJ failed to properly consider her obesity or otherwise comply with SSR 02-1p is without merit and due to be denied.

**B.     The ALJ's finding that Plaintiff does not have an impairment of listing level severity.**

Plaintiff claims that the ALJ erred in finding that her musculoskeletal impairment

related to her ankle is not of listing level severity. Specifically, she claims "[w]hen the Claimant's morbid obesity is combined with the Claimant's musculoskeletal impairment, she meets the criteria of Listing 1.02A." Pl.'s Brief (Doc. #11) at 10. While Plaintiff cites to a portion of the relevant listing which generally discusses the effects of obesity on musculoskeletal impairments, she does not cite to any medical evidence in the record which contradicts the ALJ's findings. Defendant asserts that the ALJ properly determined that Plaintiff does not suffer from a listing level impairment, and that such decision is supported by substantial evidence. Def.'s Brief (Doc. #12) at 6-7.

Plaintiff appears to assert that the ALJ failed to comply with the portion of Listing 1.00 which recognizes the effects that obesity may have on musculoskeletal impairments and how adjudicators will "consider any additional and cumulative effects of obesity" on such impairments. *See* Listing 1.00(Q). As discussed above, the ALJ determined that Plaintiff's impairment of "status post fracture left ankle and stress fracture left talus" is severe. Tr. 13. The ALJ also "consider[ed] the affects [sic] of the claimant's obesity as well as the impact it may have on her remaining severe impairments." Tr. 19. Plaintiff cites to no evidence that the ALJ did not actually consider the effect of Plaintiff's obesity on her musculoskeletal impairment. Thus, it is apparent that the ALJ complied with Listing 1.00(Q).

Plaintiff also claims that, when combined with her obesity, her musculoskeletal impairment "meets the criteria of Listing 1.02A." Pl.'s Brief (Doc. #11) at 10. Plaintiff cites

to no evidence in the record in support of this conclusion.[5] Nor does Plaintiff demonstrate that the evidence considered by the ALJ, including the testimony of the medical expert (*see* Tr. 34-35), does not support the conclusion reached by the ALJ. Listing 1.02 covers "Major dysfunction of a joint(s)" and requires, *inter alia*, that the joint be "[c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability)," which involves of "one major peripheral weight-bearing joint . . ., resulting in inability to ambulate effectively."[6] Plaintiff cites to no evidence in the record that her ankle is

---

[5] Indeed, Plaintiff does not even discuss the requirements of Listing 1.02A.

[6] Listing 1.00 provides what is meant by "ambulate effectively" as follows:
b. What we mean by inability to ambulate effectively.

2. (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

"[c]haracterized by gross anatomical deformity," or that she is unable to ambulate effectively. Indeed, the evidence only reflects that Plaintiff previously fractured her left ankle and has a stress fracture in her left talus. Furthermore, in her responses to the Physical Activities Questionnaire, Plaintiff specifically denied using assistive devices for ambulation. Tr. 104. Finally, the ALJ considered the testimony of the medical expert that Plaintiff's ankle and foot related impairments do not meet or equal the relevant listing. Tr. 34-35. It is the claimant's responsibility to prove that she is disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). This obligation requires that the claimant "prove[] that her impairment or combination of impairments meets or equals a listed impairment . . . ." *Id.* Plaintiff's failure to either present specific evidence that she satisfies the express requirements of Listing 1.02 or diminish the reliability of the evidence considered by the ALJ defeats her claim that she meets or equals the listing. Accordingly, Plaintiff's claim that the ALJ erred in finding that her impairments are not of listing-level severity is due to be denied.

### C.     The ALJ's finding that Plaintiff retains the RFC for light work.

Plaintiff asserts that the "ALJ erred in finding that the claimant has the residual functional capacity to perform light work . . . ." Pl.'s Brief (Doc. #11) at 11. In support, Plaintiff recounts the definition of light work and alludes to the ALJ's findings that Plaintiff is severely impaired by her obesity and left ankle conditions. Plaintiff also states that the vocational expert testified that, "based on the Claimant's description of her limitations and capabilities, she would not be able to perform any of her past work or other work." *Id.*

Plaintiff then concludes that "the ALJ's finding that the Claimant has the residual functional capacity to perform light work is not supported by substantial evidence." *Id.* Thus, it appears that Plaintiff attributes error to the ALJ's RFC determination because Plaintiff suffers severe impairments, she gave testimony about her limitations, and the vocational expert testified that, if Plaintiff's testimony were fully credited, Plaintiff would not be able to work. Defendant contends that the ALJ's decision, both as to Plaintiff's credibility about her limitations and the ultimate findings as to Plaintiff's RFC, are supported by substantial evidence. Def.'s Brief (Doc. #12) at 10.

Plaintiff cites to no evidence in record, other than the implications of her own testimony, that contrasts with the ALJ's findings as to her limitations or RFC. Plaintiff's treating physician cleared her to return to work on May 1, 2007. Tr. 172. The Physical Residual Functional Capacity indicates that Plaintiff is able to perform light work with additional restrictions largely adopted by the ALJ. Tr. 163-70. The medical expert also opined that Plaintiff's RFC "would be light" with additional restrictions that, again, the ALJ largely adopted. Tr. 35. While it is true that the VE testified that, "based on [Plaintiff's] description of her limitations and capabilities," she would not be able to work, the VE also testified that a hypothetical person with Plaintiff's RFC - as determined by the ALJ - would be able to perform jobs that exist in significant numbers in the national economy. Tr. 39-40. Thus, the VE's testimony does not support Plaintiff's argument.

To the extent Plaintiff's claim concerns the ALJ's finding that Plaintiff's testimony

is not fully credible to the extent to which it is inconsistent with Plaintiff's RFC, Plaintiff has failed to cite to any evidence in the record which contrasts with the medical evidence discussed above and relied upon by the ALJ. Plaintiff also does not specifically challenge the ALJ's finding that her actions render her testimony partially incredible. In particular, the ALJ noted the conservative nature of treatment Plaintiff received following her ankle surgery, that Plaintiff never complained of pain of a disabling nature, that Plaintiff did not disagree with her physician's decision to return her to work in May of 2007, that Plaintiff had not sought further medical care concerning her ankle and/or foot since May of 2007, and that Plaintiff did not complain of such disabling pain during the two emergency room visits she made after May of 2007. Tr. 18. The Court of Appeals for the Eleventh Circuit has established a test for evaluating a disability claimant's allegations of disabling pain:

> If a claimant testifies regarding subjective complaints of disabling pain and other symptoms, the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations. In order for a claimant to sufficiently establish disabling pain through testimony, she must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Majkut v. Comm'r of Soc. Sec.*, 2010 WL 3394474 at *2-*3 (11th Cir. Aug. 30, 2010) (internal quotations and citations omitted). In this case, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that, for the reasons discussed above, Plaintiff's testimony about her pain and alleged resulting limitations was not credible to the extent it was inconsistent with her

given RFC. Tr. 18. As set forth above, the ALJ articulated numerous "explicit and adequate reasons" for his decision to discredit Plaintiff's testimony. These reasons include the medical evidence in the record which supports the RFC determination, the lack of any medical evidence conflicting with the RFC determination, and Plaintiff's own actions. All of these reasons are supported by substantial evidence. Accordingly, the ALJ did not err in discrediting Plaintiff's testimony about disabling pain, and Plaintiff's claim that the ALJ erred in finding her capable of light work is due to be denied.

## VI. CONCLUSION

The Court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is supported by substantial evidence and is therefore AFFIRMED. A separate judgment will issue.

DONE this 22nd day of November, 2010.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE